**McGIVNEY, KLUGER & COOK, P.C.**
**William D. Sanders, Esq. (Attorney ID No.: 027061982)**
18 Columbia Turnpike, Third Floor
Florham Park, New Jersey 07932
(973) 822-1110
Attorneys for Plaintiff Avalon Communication Services, LLC,
f/k/a, and t/a Fox Telecom, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVALON COMMUNICATION SERVICES, LLC, f/k/a and t/a FOX TELECOM, LLC,<br><br>                    Plaintiff,<br>v.<br><br>PETORE ASSOCIATES, INC., d/b/a PETORE CONSTRUCTION, and BURLINGTON STORES, INC., d/b/a BURLINGTON COAT FACTORY<br><br>                    Defendants. | Civil Action No. 18-cv-       (  -  )<br><br>**COMPLAINT** |

Plaintiff Avalon Communication Services, LLC, formerly known as, and trading as Fox Telecom, LLC, by and through its attorneys McGivney, Kluger & Cook, P.C., states by way of Complaint against Defendant Petore Associates, Inc., doing business as Petore Construction, and Burlington Stores, Inc., doing business as Burlington Coat Factory as follows:

### PARTIES

1.      Plaintiff Avalon Communication Services, LLC is a limited liability company organized pursuant to the laws of the State of Delaware with a principal place of business at 1500 West Hampden Avenue #5, Englewood, Colorado 80110.

2.      Fox Telecom, LLC was a limited liability company organized pursuant to the laws of the State of Delaware with a principal place of business at 1500 West Hampden Avenue #5, Englewood, Colorado 80110.

3.      In December 2017, Fox Telecom, LLC changed its corporate name in Delaware to Avalon Communication Services, LLC.

4.      On or about January 24, 2018, Avalon registered "Fox Telecom, LLC" in the State of Colorado as a trade name, to be effective as of February 5, 2018.

5.      Upon information and belief, at all times relevant hereto, Defendant Petore Associates, Inc. ("Petore") is a corporation organized pursuant to the laws of the State of New Jersey that has its principal place of business at 1255 Route 70 Suite #21N, Lakewood, New Jersey 08701.

6.      Upon information and belief, at all times relevant hereto, Petore did business as "Petore Construction."

7.      Upon information and belief, at all times relevant hereto, Defendant Burlington Stores, Inc. was a corporation organized pursuant to the laws of the State of Delaware with a principal place of business at 2006 Route 130 North Burlington, New Jersey.

8.      Upon information and belief, at all times relevant hereto, Defendant Burlington Stores, Inc. did business as "Burlington Coat Factory" ("BCF").

9.      At all times relevant hereto for purposes of the below-mentioned subcontractor's agreement entered into with Petore, Avalon was operating under the corporate name, Fox Telecom, LLC.

## JURISDICTION

10.　　FSH Communications, LLC ("FSH") is the majority owner/member of Plaintiff. The former is a limited liability company organized pursuant to the laws of the State of Delaware with a principal place of business in Chicago, Illinois.

11.　　All of the owners/members of FSH are natural persons who are citizens of States other than New Jersey.

12.　　The remaining owners/members of Plaintiff are natural persons who work at Plaintiff's principal office in Colorado, and are citizens of the State of Colorado.

13.　　Upon information and belief, Petore is a citizen of New Jersey.

14.　　Upon information and belief, BCF is a citizen of Delaware and New Jersey.

15.　　This matter is a controversy between citizens of different states.

16.　　The amount in controversy between the parties exceeds $75,000.

17.　　Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 (a) (1).

## VENUE

18.　　Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391 (b) (1) because Petore and BCF reside in the District of New Jersey.

19.　　Venue is also proper in the District of New Jersey pursuant to 28 U.S.C. §1391 (b) (2) because "[a] substantial part of the events or omissions giving rise to" Plaintiff's claim for relief herein occurred in the District of New Jersey.

## FACTS COMMON TO ALL COUNTS

20.　　Plaintiff repeats and realleges each of the previous allegations of the Complaint as if set forth at length herein.

21.     Plaintiff is in the business of providing structured cabling systems, equipped to support an array of applications including voice, data, video, audio visual and wireless systems.

22.     Upon information and belief, Petore's website has characterized it as a: "national leader in providing construction and construction management services to the designer retail, department store, restaurant and hospitality developers, aviation retail and commercial sectors."

### A.  Job: PA-12603 Burlington Remodel – Brooklyn, New York

20.     On March 1, 2017, Plaintiff submitted a proposal to Petore to provide certain low voltage cabling services for BCF's Store #457 located at 625 Atlantic Avenue, Brooklyn, New York 11217.

21.     At all times relevant herein, Petore was acting as BCF's General Contractor regarding Store #457.

22.     Plaintiff, in its proposal to Petore, agreed to provide all labor, materials and equipment to perform the enumerated tasks.

23.     On or about April 18, 2017, Petore entered into a contract with Plaintiff to provide the services set forth in the proposal to BCF regarding its Store #457 for the agreed upon price of $130,000.00.

24.     On or about April 28, 2017, Plaintiff issued an invoice to Petore regarding Store #457 for $65,000.00, comprising $35,750.00 for the total cost of materials and $29,250.00 for partial labor costs.

25.      On or about August 31, 2017, Plaintiff issued an invoice to Petore regarding Store #457 for $35,000.00.

26.     On or about October 16, 2017, Plaintiff acknowledged the receipt of a $40,000.00 payment and submitted a Partial Lien Waiver reflecting said amount to BCF regarding Plaintiff's interest in BCF Store #457.

27.     On or about October 31, 2017, Plaintiff issued its final invoice to Petore for $30,000.00 for Plaintiff's work at BCF Store #457.

28.     Although all of Plaintiff's work at BCF Store #457 was completed as of October 31, 2017 when Plaintiff's final invoice was submitted to Petore, there have been no additional payments made by Petore to Plaintiff in connection with Store #457 since October 16, 2017.

29.     Plaintiff has made repeated attempts to contact Petore to discuss payment of the outstanding $90,000.000 balance for its work at Store #457.

30.     There has been no response from Petore in connection with Plaintiff's attempts to resolve the subject dispute concerning payment of the $90,000 Petore owes Plaintiff for its work at Store #457.

31.     Petore has refused or is unwilling to make payment for the balance due to Plaintiff for its services rendered at Store #457.

32.     In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $90,000 balance due for its services rendered at Store #457 pursuant to New York Lien Law §70, *et seq.*, which Petore had refused to pay.

33.     BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" in writing from Plaintiff, BCF refused to pay Plaintiff the $90,000 balance due on Plaintiffs' contract with Petore.

34.     Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at Store #457.

35.     Eicher has requested BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at Store #457, but BCF has failed or refused to do so.

**B.      *Job: PA-12616-103 Burlington Store #6 – Paramus***

36.     On March 25, 2017, Plaintiff submitted a proposal to Petore to provide certain low voltage cabling services for BCF Store #6 located at 651  Route 17 South, Paramus, New Jersey 07652.

37.     In the proposal for BCF Store #6, Plaintiff agreed to provide Petore with all labor, materials and equipment to perform the enumerated tasks set forth in its proposal.

38.     Plaintiff indicated it required Petore to make payment of 50% of the cost of material and labor at the start of the project for BCF Store #6.

39.     On or about April 19, 2017, Petore entered into a contract with Plaintiff, to provide the services set forth in the March 25, 2017 proposal for BCF Store #6 for the price of $53,090.00 to be paid to Plaintiff.

40.     On or about May 31, 2017, Plaintiff issued an invoice to Petore for $26,545.00 concerning Plaintiff's services at for BCF Store #6, comprising $13,090.00 for the total cost of the materials and $13,455.00 for partial labor costs.

41.      On July 27, 2017, Plaintiff submitted a proposal to Petore for a change order to provide and install nine (9) volume control speakers and thirty-two (32) "cat5E" cables at BCF Store #6.

42.     Plaintiff's July 27, 2017 proposed change order called for it to provide all labor, materials and equipment to perform the enumerated tasks at BCF Store #6 for an additional $6,940.00.

43.     On or about August 31, 2017, Plaintiff issued a second and final invoice to Petore for $33,485.00, comprising $26,545.00 for the remaining labor and $6,940.00 for the July 27, 2017 change order, all for work at BCF Store #6.

44.     On or about October 16, 2017, Plaintiff acknowledged the receipt of a $15,000.00 payment against its invoices for work at BCF Store #6 and submitted a Partial Lien Waiver reflecting said amount to BCF.

45.     Although all Plaintiff's work was completed at BCF Store #6 as of the submission on August 31, 2017 of its final invoice to Petore, Petore has made no additional payments to Plaintiff in connection with BCF Store #6 since October 16, 2017.

46.     Plaintiff has made repeated attempts to contact Petore to discuss payment for the $45,030.00 that remains unpaid in connection with Plaintiff's work at BCF Store #6 .

47.     There has been no response from Petore in connection with Plaintiff's attempts to resolve the subject dispute concerning the $45,030.00 that remains unpaid in connection with Plaintiff's work at BCF Store #6.

48.     Petore either has refused or is unwilling to pay Plaintiff the $45,030.00 that remains unpaid in connection with Plaintiff's services rendered in connection with BCF Store #6.

49.     In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $45,030.00 balance due for its services rendered at Store #6 pursuant to N.J.S.A. 2A:44A-21, *et seq.*, which Petore had refused to pay.

50.     BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" from Plaintiff, BCF refused to pay Plaintiff the $45,030.00 balance due on Plaintiffs' contract with Petore.

51.     Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at Store #6.

52.     Eicher has requested that BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at Store #6, but BCF has failed or refused to do so.

### C.  Job: PA-12612-103 Burlington Store #557 – Chicago

53.     On April 10, 2017, Plaintiff submitted a proposal to Petore to provide low voltage cabling services for BCF Store #557 located at 1710 N. Kostner Ave., Chicago, IL.

54.     In the proposal, Plaintiff agreed to provide Petore with all labor, materials and equipment to perform the enumerated tasks at BCF Store #557.

55.     Plaintiff required 50% of the cost of material and labor at the start of the BCF Store #557 project.

56.     On May 24, 2017, Plaintiff submitted a revised proposal to Petore to provide additional cabling services for BCF Store #557.

57.      On or about May 25, 2017, Petore entered into a contract with Plaintiff to provide the services set forth in the revised proposal dated May 24, 2017 for BCF Store #557 for $69,000.00, which reflected an increase of $11,000 for the additional services to be provided by Plaintiff as reflected in the revised proposal.

58.     Pursuant to the parties' agreement for BCF Store #557, on or about June 1, 2017, Plaintiff issued an invoice to Petore for $34,500.00, or 50% of the cost of the project.

59.      On or about October 16, 2017, Plaintiff acknowledged the receipt of $30,000.00 in payment for its work at BCF Store #557 and submitted to BCF a Partial Lien Waiver reflecting payment of said amount to BCF.

60.     On or about October 31, 2017, Plaintiff issued its second and final invoice for work performed at BCF Store #557 to Petore for $34,500.00.

61.     Despite having fully completed all tasks as required by the parties' agreement for Plaintiff's services at BCF Store #557, there has been no additional payment made by Petore for such services since October 16, 2017.

62.     Plaintiff has made repeated attempts to contact Petore to discuss payment of the outstanding $39,000.00 in labor and costs concerning their agreement for Plaintiff's services at BCF Store #557.

63.     There has been no response from Petore in connection with Plaintiff's attempts to discuss payment of the outstanding $39,000.00 for labor and costs incurred pursuant to their agreement for Plaintiff's services at BCF Store #557.

64.     Petore has refused or remains unwilling to make payment for $39,000.00 in labor and costs due to Plaintiff pursuant to their agreement for Plaintiff's services at BCF Store #557.

65.     In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $39,000.00 balance due for its services rendered at Store #557 pursuant to 770 ILCS 60, *et seq.,* the Illinois Mechanics Lien Act, which Petore had refused to pay.

66.     BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" from Plaintiff, BCF refused to pay Plaintiff the $39,000.00 balance due on Plaintiffs' contract with Petore for Plaintiff's work at Store #557.

67.     Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at Store #557.

68.     Eicher has requested that BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at Store #557, but BCF has failed or refused to do so.

**D.     *Job: PA-12613-100 Burlington Store #523 – Melrose***

69.     On April 19, 2017, Plaintiff submitted a proposal to Petore to provide low voltage cabling services for BCF Store #523 located at 2031 Mannhein Road, Melrose, Illinois.

70.     In Plaintiff's proposal for work at BCF Store #523, it agreed to provide all labor, materials and equipment to perform the enumerated tasks.

71.     Plaintiff required payment from Petore of 50% of the cost of material and labor at the start of the project for BCF Store #523.

72.     On or about May 29, 2017, Petore entered into an agreement with Plaintiff to provide the services set forth in the proposal for BCF Store #523, dated April 19, 2017.

73.      The agreed upon price for Plaintiff to provide the services set forth in the proposal for BCF Store #523 was $25,115.00, comprising $3,150.00 for materials and $22,000.000 for labor.

74.     On or about June 1, 2017, Plaintiff issued an invoice to Petore for $12,557.50, or one-half of the contract price for Plaintiff's services set forth in their agreement for Plaintiff's services at BCF Store #523.

75.     On or about June 22, 2017, Plaintiff acknowledged the receipt of $2,500.00 from Petore in partial payment for Plaintiff's services at BCF Store #523 and submitted a Partial Lien Waiver reflecting said amount to BCF.

76.     On or about September 29, 2017, Plaintiff issued a second invoice to Petore for Plaintiff's services at BCF Store #523 for $12,557.50 reflecting the final 50% of the cost of the project.

77.     On or about October 16, 2017, Plaintiff acknowledged the receipt of $12,500.00 in payment for Plaintiff's services at BCF Store #523 and submitted a Partial Lien Waiver reflecting said amount to BCF.

78.     Despite Plaintiff having fully completed all tasks as required by the subcontract for Plaintiff's services at BCF Store #523, there has been no additional payment made by Petore since October 16, 2017.

79.     Plaintiff has made repeated attempts to contact Petore to discuss payment of the outstanding $10,115.00 for Plaintiff's services at BCF Store #523 as outlined in the abovementioned contract.

80.     There has been no response from Petore in connection Plaintiff's attempts to resolve the subject dispute concerning the outstanding $10,115.00 for Plaintiff's services at BCF Store #523 outlined in the abovementioned contract.

81.     Petore has either refused or is unwilling to pay Plaintiff the outstanding $10,115.00 for Plaintiff's services at BCF Store #523.

82.     In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $10,115.00 balance due for its services rendered at Store #523 pursuant to 770 ILCS 60, *et seq.,* the Illinois Mechanics Lien Act, which Petore had refused to pay.

83.     BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" from Plaintiff, BCF refused to pay Plaintiff the $10,115.00 balance due on Plaintiffs' contract with Petore for Plaintiff's work at Store #523.

84.     Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at Store #523.

85. Eicher has requested that BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at Store #523, but BCF has failed or refused to do so.

### E.   Job: PA-12614-100 Burlington Store #288 – Lansing

86. On April 26, 2017, Plaintiff submitted a proposal to Petore to provide certain low voltage cabling services for BCF Store #288 located at 16895 Torrance Road Lansing, IL.

87. In the proposal, Plaintiff agreed to provide Petore with all labor, materials and equipment to perform the enumerated tasks at BCF Store #288.

88. Plaintiff required Petore to pay 50% of the cost of material and labor at the outset of the project at BCF Store #288.

89. On or about May 29, 2017, Petore entered into an agreement with Plaintiff to provide the services at BCF Store #288 set forth in the proposal dated April 26, 2017.

90. The agreed upon price in the April 26, 2017 proposal for Plaintiff's services at BCF Store #288 was $8,600.00, comprising $3,600.00 for materials and $5,000.00 for labor.

91. On or about June 1, 2017, Plaintiff issued an invoice to Petore for a $2,500 partial progress payment for its labor and materials at BCF Store #288.

92. On or about June 23, 2017, Plaintiff acknowledged the receipt of that $2,500.00 partial progress payment from Petore for its labor and materials at BCF Store #288 and submitted a Partial Lien Waiver reflecting said amount to BCF.

93. During the course of Plaintiff's work at BCF Store #288, it issued a change order to Petore for $8,000.00 concerning installation of cables and customer-provided electronics.

94. On or about October 31, 2017, Plaintiff issued a second invoice to Petore for $14,100.00, comprising $6,100.00 as the final bill for the original contract price for Plaintiff's

services at BCF Store #288, and $8,000.00 for a change order identified in the preceding Paragraph.

95.     Although all work at BCF Store # 288 was completed as of the final billing, that is, on or before October 31, 2017, there have been no additional payments made by Petore since June 23, 2017.

96.     Plaintiff has made repeated attempts to contact Petore to discuss payment of the outstanding $14,100.00 in charges its services at BCF Store #288.

97.     There has been no response from Petore in connection with Plaintiff's attempts to obtain payment of the outstanding $14,100.00 in charges for Plaintiff's work at BCF Store # 288.

98.     Petore has either refused or is unwilling to pay Plaintiff for the services rendered in connection with Plaintiff's work at BCF Store # 288.

99.     In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $14,100.00 balance due for its services rendered at Store #288 pursuant to 770 ILCS 60, *et seq.,* the Illinois Mechanics Lien Act, which Petore had refused to pay.

100.    BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" from Plaintiff, BCF refused to pay Plaintiff the $14,100.00 balance due on Plaintiffs' contract with Petore for Plaintiff's work at Store #288.

101.    Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at Store #288.

102.    Eicher has requested that BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at Store #288, but BCF has failed or refused to do so.

### F.     Job: PA-12681-114 Burlington Stores– Mt. Laurel

83.     On October 25, 2017, Plaintiff submitted a proposal to Petore to provide low voltage cabling services for the BCF Store located at 70 Centerton Road, Mt. Laurel, NJ 08054.

84.     In the proposal, Plaintiff agreed to provide all labor, materials and equipment to perform the enumerated tasks.

85.     On or about November 29, 2017, Petore entered into an agreement with Plaintiff to provide the services set forth in the proposal for the BCF Store located at 70 Centerton Road, dated October 25, 2017.

86.     The agreed upon price was $81,000.00 for Plaintiff's services at the BCF Store located at 70 Centerton Road, comprising $20,750.00 for materials and $60,250.00 for labor.

87.     On or about November 30, 2017, Plaintiff issued an invoice to Petore in the amount of $40,500, reflecting a payment request equal to half of the contract price agreed-to for Plaintiff's work at the BCF Store located at 70 Centerton Road.

88.     On or about December 29, 2017, Plaintiff issued a second invoice to Petore for Plaintiff's work at the BCF Store located at 70 Centerton Road in the amount of $40,500.00, representing 50% of the price for Plaintiff's work there.

89.     Despite all of Plaintiff's work at the BCF Store located at 70 Centerton Road having been completed, Plaintiff has yet to receive payment from Petore for the balance outstanding of $81,000 pursuant to their agreement.

90.     Plaintiff has made repeated attempts to contact Petore to discuss payment of the outstanding $81,000.00 for Plaintiff's work at the BCF Store located at 70 Centerton Road in the abovementioned contract.

91.    There has been no response from Petore in connection with Plaintiff's attempts to resolve the subject dispute concerning the outstanding balance of $81,000 Petore owes to Plaintiff for its work at the BCF Store located at 70 Centerton Road.

92.    Petore has either refused or is unwilling to pay Plaintiff the outstanding balance of $81,000 Petore owes to Plaintiff for its work at the BCF Store located at 70 Centerton Road.

93.    In or about late January 2018, Plaintiff's Vice President-Operations, Marvin Eicher, made demand of BCF for payment of the $81,000.00 balance due for its services rendered at the BCF Store located at 70 Centerton Road pursuant to N.J.S.A. 2A:44A-21, *et seq.,* which Petore had refused to pay.

94.    BCF advised Eicher that as a result of its receipt of what it believed to have been a full "release" from Plaintiff, BCF refused to pay Plaintiff the $81,000.00 balance due on Plaintiffs' contract with Petore for Plaintiff's work at the BCF Store located at 70 Centerton Road.

95.    Eicher told BCF that Plaintiff had provided no such release and/or satisfaction of its statutory lien to indicate that Petore had paid Plaintiff "in full" for work at the BCF Store located at 70 Centerton Road.

96.    Eicher has requested that BCF provide Plaintiff with copies of Plaintiff's supposed "full release of lien" for its work at the BCF Store located at 70 Centerton Road, but BCF has failed or refused to do so.

## COUNT I---BREACH OF CONTRACT AGAINST PETORE

97.    Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

98.     Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

99.     Plaintiff has provided regular invoices to Petore to obtain payment for the services it provided to Petore pursuant to their agreements.

100.    Petore has made certain partial payments to Plaintiff, all of which have been identified herein, and for which Plaintiff has afforded Petore appropriate credit.

101.    However, despite the partial payments from Petore and Plaintiff's demand for complete payment, Petore has failed or otherwise refused to fulfill its obligations to Plaintiff to pay $279,245 pursuant to the agreements between them.

102.    Petore has breached its contracts with Plaintiff in the amounts set forth above as outstanding despite Plaintiff's demands.

103.    Plaintiff has been damaged by at least $279,245.00 reason of Petore's breach of contract.

**WHEREFORE**, Plaintiff demands judgment against Petore for:

A.   Compensatory damages of at least $279.245.00.
B.   Pre-judgment interest.
C.   Post-Judgment interest
D.   Costs of Suit
E.   Such other relief that the Court may deem equitable and just.

## <u>COUNT II—ACCOUNT STATED AGAINST PETORE</u>

104.    Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

105.    Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

106.   Plaintiff has provided regular invoices to Petore to obtain payment for the services it provided to Petore which invoices stated the sums due and owing from Petore to Plaintiff and which stated the account between them.

107.   Petore has made certain partial payments to Plaintiff on its account with Plaintiff, all of which have been identified herein, and for which Plaintiff has afforded Petore appropriate credit.

108.   However, despite the partial payments from Petore and Plaintiff's demand for complete payment, Petore has failed or otherwise refused to fulfill its obligations to Plaintiff to pay the balance of $279,245 that remains unpaid on the account stated between them.

109.   Petore has failed to maintain as current the account stated between it and Plaintiff in the amount set forth above that remains outstanding despite Plaintiff's demands.

110.   There remains due and owing to Plaintiff from Petore at least $279,245.00 on the account stated between them.

**WHEREFORE**, Plaintiff demands judgment against Petore for:

A.   Compensatory damages of at least $279,245.00.
B.   Pre-judgment interest.
C.   Post-Judgment interest
D.   Costs of Suit
E.   Such other relief that the Court may deem equitable and just.

## COUNT III---QUANTUM MERUIT AGAINST PETORE

111.   Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

112.   Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

113.    The agreed-upon price for Plaintiff's services represents the reasonable value for those services.

114.    Plaintiff has provided regular invoices to Petore to obtain payment for the services it provided to Petore that set forth the reasonable value of its services.

115.    Petore has made certain partial payments to Plaintiff, all of which have been identified herein, and for which Plaintiff has afforded Petore appropriate credit.

116.    However, despite the partial payments from Petore and Plaintiff's demand for complete payment, Petore has failed or otherwise refused to fulfill its obligations to Plaintiff to pay $279,245.00 that represents the reasonable value of Plaintiff's services.

117.    Petore has to pay Plaintiff the reasonable value of Plaintiff's services in the amounts set forth above as outstanding despite Plaintiff's demands.

118.    Plaintiff has been damaged by at least $279,245.00 reason of Petore's failure to pay Plaintiff the reasonable value of its services rendered.

**WHEREFORE**, Plaintiff demands judgment against Petore for:

A.  Compensatory damages of at least $279,245.00.
B.  Pre-judgment interest.
C.  Post-Judgment interest.
D.  Costs of Suit.
E.  Such other relief that the Court may deem equitable and just.

### COUNT IV—BCF'S LIEN OBLIGATIONS TO PLAINTIFF

83.    Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

84.    Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

85.    Petore has failed to pay Plaintiff for its services and is therefore in breach of the agreements between them.

86.     By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, Plaintiff has a lien on BCF's respective properties pursuant to law.

87.     By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, and where Petore has failed or refused to pay Plaintiff in full, Plaintiff has the right to look to BCF for payment, in the event that Petore fails to fulfill its obligations to pay BCF pursuant to their contract for the provision of labor and materials to BCF.

88.     In the event that BCF were to fail to pay Plaintiff upon appropriate demand, Plaintiff would have the right to "execute" on its respective liens.

89.     Plaintiff has demanded that BCF pay the sums due and owing from Petore to Plaintiff in satisfaction of Petore's obligations to Plaintiff and Plaintiff's liens against BCF.

90.     BCF has failed or refused to pay Plaintiff despite the existence of Plaintiff's valid liens against BCF.

**WHEREFORE**, Plaintiff demands judgment against BCF for:

A.  Compensatory damages of at least $279,245.00, jointly and severally with Petore.
B.  Pre-judgment interest.
C.  Post-Judgment interest.
D.  Costs of Suit.
E.  Such other relief that the Court may deem equitable and just.

## COUNT V—DECLARATORY JUDGMENT AGAINST BCF

83.     Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

84.     Plaintiff has asserted to BCF that it has valid and unsatisfied liens against the respective BCF properties where Plaintiff provided labor and materials pursuant to its agreements with Petore.

85.     BCF has denied that those liens remain unsatisfied due to its having received what it contends are full releases of lien from Plaintiff.

86.     BCF has failed or refused to pay Plaintiff for amounts due to Plaintiff on account of Petore's failure to pay Plaintiff based on its contention that it has received full lien releases, despite the fact that Plaintiff has repeatedly advised BCF that such Plaintiff never executed any such releases.

87.     There now exists a present and actual controversy between Plaintiff and BCF as to whether Plaintiff's liens against the subject BCF properties remain in full force and effect.

**WHEREFORE**, Plaintiff demands judgment pursuant to 28 U.S.C. §2201, *et seq.* against BCF:

A. Declaring and adjudging that Plaintiff's liens pursuant to law remain unsatisfied concerning its work on the respective BCF properties identified herein.
B. That BCF and Petore are jointly and severally liable to Plaintiff for compensatory damages of at least $279,245.00.
C. Pre-judgment interest.
D. Post-Judgment interest.
E. Costs of Suit.
F. Such other relief that the Court may deem equitable and just.

## COUNT VI—FRAUD AGAINST PETORE

88.     Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

89.     Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

90.     By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, Plaintiff has a lien on the respective properties pursuant to law.

91.     By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, and where Petore has failed or refused to pay Plaintiff in full, Plaintiff has the right to look to BCF for payment, in the event that Petore fails to fulfill its obligations to pay BCF pursuant to their contract for the provision of labor and materials to BCF.

92.     In the event that BCF were to fail to pay Plaintiff upon appropriate demand, Plaintiff would have the right to "execute" on its respective liens.

93.     According to BCF, Petore has presented BCF with full releases of Plaintiff's liens for each of the respective BCF Stores where Plaintiff worked for Petore pursuant to the agreements between them.

94.     Plaintiff has never executed full releases of Plaintiff's liens for any of the respective BCF Stores where Plaintiff worked for Petore pursuant to the agreements between them.

95.     Upon information and belief, any full release of lien Petore presented to BCF that purported to have been executed by Plaintiff was prepared by Petore without authorization.

96.     To the extent that any full release of lien on behalf of Plaintiff that Petore presented to BCF represented that Petore had paid Plaintiff in full for Plaintiff's work at one or more of the BCF stores where Plaintiff had worked for Petore, such would constitute a forgery that included false statements of the material facts concerning the fact that Petore had not, in fact, paid Plaintiff in full.

97.     BCF has relied upon the false statements of material facts in the so-called full releases of Plaintiff's liens on the respective BCF stores where Plaintiff performed work on behalf of Petore as a basis upon which BCF has failed or refused to pay Plaintiff for the balance of monies due and owing from Petore to Plaintiff pursuant to Plaintiff's otherwise valid liens.

98.     Upon information and belief, Petore knowingly and willfully intended to damage Plaintiff by reason of its falsely representing to BCF that Petore had paid Plaintiff in full, with such representations having been made by means of the presentation of full lien releases that falsely purported to have been executed by Plaintiff.

99.     Plaintiff has been damaged due to the fraudulent conduct of Petore in its presentation of intentional misrepresentations to BCF as to the status of Plaintiff's so-called "full" releases of Plaintiff's liens.

**WHEREFORE**, Plaintiff demands judgment against Petore:

A.  For compensatory damages, jointly and severally with BCF, of at least $279,245.00.
B.  Punitive Damages in an amount to be determined by the finder of fact.
C.  Pre-judgment interest.
D.  Post-Judgment interest.
E.  Attorney's fees.
F.  Costs of Suit.
G.  Such other relief that the Court may deem equitable and just.

## COUNT VII—NEGLIGENT MISREPRESENTATION AGAINST PETORE

100.    Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

101.    Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

102.    By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, Plaintiff has a lien on the respective properties pursuant to law.

103.    By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, and where Petore has failed or refused to pay Plaintiff in full, Plaintiff has the right to look to BCF for payment, in the event that Petore fails to fulfill its obligations to pay BCF pursuant to their contract for the provision of labor and materials to BCF.

104.    In the event that BCF were to fail to pay Plaintiff upon appropriate demand, Plaintiff would have the right to "execute" on its respective liens.

105.    Petore had a duty to act with reasonable care with respect to making representations to interested parties, such as BCF, concerning the status of its having fulfilled its obligations to Plaintiff.

106.    Upon information and belief, any full release of lien Petore presented to BCF that purported to have been executed by Plaintiff was prepared by Petore without having exercised reasonable care.

107.    BCF has relied upon the false statements of material facts in the so-called full releases of Plaintiff's liens on the respective BCF stores where Plaintiff performed work on behalf of Petore as a basis upon which BCF has failed or refused to pay Plaintiff for the balance of monies due and owing from Petore to Plaintiff pursuant to Plaintiff's otherwise valid liens.

108.    Plaintiff has been damaged due Petore's failure to have exercised reasonable care in its presentation of releases of lien to BCF that purported to represent that Plaintiff's account

with Petore had been "paid in full" and supported the issuance of false releases of Plaintiff's liens.

      **WHEREFORE**, Plaintiff demands judgment against Petore:

    A.  For compensatory damages, jointly and severally with BCF, of at least $279,245.00.
    B.  Pre-judgment interest.
    C.  Post-Judgment interest.
    D.  Costs of Suit.
    E.  Attorney's fees.
    F.  Such other relief that the Court may deem equitable and just.

## COUNT VIII—PETORE'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

    109.    Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

    110.    Plaintiff rendered services, including providing labor and materials, pursuant to agreements between it and Petore for providing those services to Petore.

    111.    The agreements between Petore and Plaintiff carry a covenant implied in law that the parties deal with each other fairly and in good faith, that is, based on honesty in fact, and that they shall not do anything to deprive the other of the benefits of their agreements.

    112.    By reason of operation of law and/or compliance with law in the various States set forth herein where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, Plaintiff has a lien on the respective properties pursuant to law.

    113.    It is implied that in the agreements between Petore and Plaintiff that, in the event that Petore fails or refuses to pay Plaintiff in accordance with said agreement(s), Petore will do nothing to interfere with Plaintiff's right to pursue recovery on those liens to which it is entitled by reason of operation of law and/or compliance with law in the various States set forth herein

where Plaintiff provided services and materials to Petore as part of Petore's work for BCF, and where Petore has failed or refused to pay Plaintiff in full.

114.  Any full release of lien that Petore presented to BCF that purported to have been executed by Plaintiff, was in fact prepared by Petore and did deprive Plaintiff of its legitimate expectation that Petore would not interfere with Plaintiff's right to enforce/collect from BCF by means of enforcing said liens.

115.  By reason of the so-called full releases of lien from Plaintiff that Petore has falsely presented to BCF, BCF has failed or refused to pay Plaintiff for the balance due on Plaintiff's agreements with Petore for work on behalf of BCF.

116.  Plaintiff has been damaged due Petore's having breached the covenant of good faith and fair dealing implied in law in the agreements between them.

**WHEREFORE**, Plaintiff demands judgment against Petore:

A.  For compensatory damages, jointly and severally with BCF, of at least $279,245.00.
B.  Pre-judgment interest.
C.  Post-Judgment interest.
D.  Costs of Suit.
E.  Attorney's fees.
F.  Such other relief that the Court may deem equitable and just.

## COUNT VIX—TORTIOUS INTERFERENCE AGAINST PETORE

117.  Plaintiff repeats and realleges all prior allegations of the Complaint as if set forth at length herein.

118.  Petore knew that it owed Plaintiff the balance due for Plaintiff having provided labor and materials pursuant to their agreements for Plaintiff to perform work at the BCF properties identified above.

119.  At all times relevant here, Petore knew that in the absence of its having paid Plaintiff in full for Plaintiff's work at one or more of the BCF properties identified above,

Plaintiff was entitled to receive payment from BCF of the balance due for each respective property in accordance with such lien rights as afforded Plaintiff by operation of law and/or in compliance with law.

120.    At all times relevant herein, Plaintiff had a reasonable expectation that it would be able to collect from BCF, the balance due to Plaintiff from Petore, in light of its liens on the respective BCF properties where it had provided labor and materials pursuant to its respective contracts with Petore.

121.    To the extent that Petore provided BCF with false or forged documents purporting to represent written releases of Plaintiff's liens against BCF, it did so knowingly and with the purpose that such would interfere with Plaintiff's ability to collect the amounts that Petore had failed or refused to pay to Plaintiff because, *inter alia*, BCF would refuse to pay Plaintiff and/or contest its right to enforce its liens accordingly.

122.    Petore acted without just cause or excuse in presenting false or forged documents purporting to represent written releases of Plaintiff's liens against BCF.

123.    Petore knew and intended that its actions would deprive Plaintiff of its legitimate expectations of economic gain or benefit from collection on its liens on the respective BCF properties where it had provided labor and materials.

124.    Plaintiff has been damaged due to Petore's intentional interference with its expectations of economic benefit from its lien rights against BCF.

**WHEREFORE**, Plaintiff demands judgment against Petore:

A.  For compensatory damages, jointly and severally with BCF, of at least $279,245.00.
B.  For punitive damages,
C.  Pre-judgment interest.
D.  Post-Judgment interest.
E.  Attorney's fees.
F.  Costs of Suit.

G.  Such other relief that the Court may deem equitable and just.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, through its counsel, hereby demands a trial by jury on all triable issues.

McGIVNEY & KLUGER, P.C.
Attorneys for Plaintiff Avalon Communication Services, LLC, f/k/a, and t/a Fox Telecom, LLC

/s/ *William D. Sanders*

WILLIAM D. SANDERS, ESQ.

Dated: August 28, 2018

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy stated herein is not the subject of any other action pending in any court or of any pending arbitration proceeding.  I further certify that I am unaware of any other action or arbitration proceeding contemplated and that there is no other party who should be, but has not been, joined in this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ *William D. Sanders*

WILLIAM D. SANDERS, ESQ.

Dated: August 28, 2018

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 201.1(d)(3)</u>

Pursuant to Local Civil Rule 201.1(d)(3), I hereby certify that the amount in controversy in the matter in controversy exceeds $150,000, exclusive of interest, costs, and punitive damages

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ *William D. Sanders*

**WILLIAM D. SANDERS, ESQ.**

Dated: August 28, 2018